UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HONEYWELL INTERNATIONAL INC.,

Plaintiff,

**COMPLAINT**

v.

Index No.

R.R. DONNELLEY & SONS COMPANY;
LSC COMMUNICATIONS, INC.;  AND
DONNELLEY FINANCIAL SOLUTIONS, INC.,

Defendants.

_____

Plaintiff Honeywell International Inc. ("Honeywell"), by and through its undersigned attorneys Gilberti Stinziano Heintz & Smith, PC, alleges as follows upon information and belief:

**INTRODUCTION**

1.     This civil action is brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 *et seq*., ("CERCLA"), also known as Superfund; and New York Environmental Conservation Law ("N.Y.E.C.L.") § 27-1301 *et seq*.; Article 12 of the New York Navigation Law; and common law.  This Complaint concerns the reimbursement of approximately $7.6 million in past and future costs and damages arising out of the release of Hazardous Substances at the Highland Avenue - Tract II Site, an approximate 19-acre parcel of property located at 3001 Highland Avenue in Niagara Falls, New York ("Site").

2.     Roughly 6.5 acres of the Site ("the Moore parcel") was previously owned and operated by Carter Crume Company, American Sales Book Company, Inc., and Moore Business Forms Corporation (collectively "Moore"), all predecessors of R.R. Donnelley & Sons Company ("R.R. Donnelley").

3.     The Moore parcel contained a manufacturing facility constructed by Moore over a number of years. At one point in time, the facility was considered the largest business form plant in the world. Between 1902 and 1970, Moore manufactured various printed products at the Site, including those produced through the use of linotype, stereotype and lithographic lead-based printing processes, which printing processes and related printing plate production process resulted in the release and disposal of lead, lead-containing trimmings and shavings, and other hazardous substances at the Site. In addition, polycyclic aromatic hydrocarbons ("PAHs") were disposed of on the portion of the Site associated with Moore's carbon coating operations as were oils released from a number of hydraulic lifts associated with Moore's operations.

4.     Defendant R.R. Donnelley and/or its recently spun-off divisions, LSC Communications, Inc. and Donnelley Financial Solutions, Inc. (collectively, the "Defendants"), are the legal successor(s) to the liability of Moore at the Site.

5.     Some of the remainder of the Site, roughly 12 acres, was previously owned and operated by a predecessor to Honeywell.

6.     In 2008, R.R. Donnelley, Honeywell, the City of Niagara Falls, New York ("City") and Niagara Mohawk Power Corp. ("NiMo") were identified as potentially responsible parties ("PRPs") for the Site in notice letters issued by the New York State

Department of Environmental Conservation ("NYSDEC") pursuant to N.Y.E.C.L., Article 27, Title 13.

7.      Since 2010, Honeywell has worked cooperatively with NYSDEC to study and remediate Site conditions, including, but not limited to, the release or threatened release of hazardous substances such as lead, PAHs, solid wastes, petroleum and/or other regulated materials, pollutants or contaminants on, at or from the Moore parcel.  Since October 28, 2011, such work has been conducted pursuant to an Order on Consent and Administrative Settlement (Index No. B9-0777-08-03) of the same date ("AOC"), to which Honeywell is the sole Respondent. The AOC is attached hereto as Exhibit A.

8.      As set forth in more detail below, Honeywell has reimbursed NYSDEC for certain costs associated with the investigation and remediation of the Site, and is the sole party that has funded and performed Site investigations and remediation of the Site.  The unreimbursed costs Honeywell has incurred in addressing environmental contamination at the Site are approximately $18 million, of which approximately $7.6 million was incurred on the Moore parcel, well in excess of Honeywell's responsibility at the Site. Honeywell will incur additional remedial costs at the Site, including costs with respect to the Moore parcel.

9.      The purpose of this action is to allocate to one or more Defendant(s) its equitable share of the past and future remedial costs incurred by Honeywell associated with environmental contamination at the Site.  Accordingly, Honeywell seeks judgment against Defendant(s) for their equitable share of the remedial costs Honeywell has incurred to date as well as future Site costs.

## JURISDICTION

10.     This Court has exclusive subject matter jurisdiction over Honeywell's CERCLA claims in Counts I, II and IV pursuant to 42 U.S.C. § 9607 and § 9613(b) and 28 U.S.C. § 1331.

11.     This Court has subject matter jurisdiction over the claims asserted in COUNT IV pursuant to 28 U.S.C. § 2201.

12.     The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over all claims asserted under Federal law.

13.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction concerning any claims asserted under State law or common law, including those set forth in Counts III and V.

## VENUE

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) because the Site is located within this Judicial District and the releases and/or threatened releases of hazardous substances at the Site have occurred and/or are threatened to occur within this Judicial District.

## PARTIES

15.     Plaintiff Honeywell is a Delaware corporation and successor to a prior owner and operator of a portion of the Site.

16.     Defendant R.R. Donnelley is a printing services corporation headquartered at 33 West Wacker Drive, Chicago, Illinois.  R.R. Donnelley is the legal successor to Carter Crume Company, American Sales Book Company, Inc., and Moore Business Forms Corporation, all prior owners and/or operators of a portion of the Site.

17.     In August 2015, R.R. Donnelley announced its intention to split into three independent, publicly-traded companies: Defendants R.R. Donnelley & Sons, Inc., LSC Communications, Inc. and Donnelley Financial Services, Inc. Upon information and belief, all three Defendants are incorporated in the State of Delaware with a principal place of business at 33 West Wacker Drive, Chicago, Illinois.

18.     Upon information and belief, one or more of these Defendants is the legal successor to Moore for its liability at the Site.

## GENERAL ALLEGATIONS

A.     **The Site**

19.     The Site is located at 3001 Highland Avenue in the City of Niagara Falls, County of Niagara, New York and is approximately 19 acres in size.

20.     By operation of a tax foreclosure in 1990, the Site, except for a right-of-way owned by Niagara Mohawk, was acquired by the City of Niagara Falls, New York.   The Site (other than the Niagara Mohawk right-of-way) is currently owned by Brightfields LLC.

21.     The area surrounding the Site is a mixture of industrial, commercial and residential uses.   Residential areas are present to the west, south and east of the Site, and an elementary school and several churches are located within 300 feet of the Site.

22.     Moore contributed to the environmental contamination at the Site by its manufacturing and related operations and other waste disposal practices between 1902 and 1970.

23.     During this time period, Moore designed and manufactured business forms, using, among other processes, linotype, stereotype and lithographic printing presses, which involved the production and remanufacturing of lead-based printing plates on-Site, as

well as the on-Site disposal of lead-based and PAH wastes.  Additionally, Moore utilized hydraulic lifts which leaked oils onto the Site

24.     Moore's manufacturing operation resulted in the release and disposal of lead, lead-containing trimmings and shavings, PAHs from its carbon coating process, petroleum and other hazardous substances at the Site.

25.     In the late 1990s, NYSDEC conducted investigations at the Site.  As a result of these investigations NYSDEC identified lead contamination on the Moore parcel.  Among other materials, NYSDEC identified evidence of lead turnings and shavings generated, released and disposed of on the Moore parcel.

**B.     Site Response Actions**

26.     In March 2003, NYSDEC, following investigations of environmental contamination at the Site, issued a Record of Decision ("ROD") for the Site.  The ROD selected a remedy which required, among other things, the excavation and off-site disposal of lead contaminated and other impacted Site soils and fill material to achieve industrial soil cleanup objectives, and the demolition and removal of certain Site structures. The Record of Decision is attached hereto as Exhibit B.

27.     In or around 2008, Site sampling performed on behalf of NYSDEC revealed the presence of lead at concentrations in excess of NYSDEC's hazardous waste criteria and at depths not accounted for in the ROD.

28.     Based on this new data, the NYSDEC proposed amending the ROD in August 2010 to require the excavation and treatment of all soil and fill materials throughout the Site with contamination levels above soil cleanup objectives for residential use.  The proposed ROD amendment is attached hereto as Exhibit C.

29.     The proposed ROD amendment further required the backfill, grading and restoration of the Site with clean soil and grass.

30.     The expanded scope of the ROD, as proposed by the ROD amendment, significantly increased the estimated cost of the remedy.

31.     The ROD amendment was proposed by NYSDEC at approximately the same time that R.R. Donnelley, Honeywell, the City and NiMo were identified by NYSDEC as PRPs for the Site in 2010.

32.     Because of the significant increase in cost associated with the proposed ROD amendment, Honeywell submitted comments to the NYSDEC on the proposed ROD amendment. Honeywell was the only PRP to submit comments to NYSDEC, even though all PRPs had the opportunity to do so.   Honeywell asserted that, based on Honeywell's engineering and pre-design sampling and waste treatability studies, an alternative remedial action which was protective of human health and the environment and more cost effective was appropriate for the Site.

33.     Based, in part, on Honeywell's comments to the proposed ROD amendment, the NYSDEC adopted a second amendment to the ROD ("Final ROD Amendment"), dated March 28, 2012. The Final ROD Amendment is attached hereto as Exhibit D.

34.     No party other than Honeywell participated in the process of working with NYSDEC to identify a more cost effective remedy for the Site.

35.     In the Final ROD Amendment, the NYSDEC required excavation of contaminated soil and fill materials from a portion of the Site, and the on-Site treatment of excavated soil and fill materials which exceeded NYSDEC remedial criteria for the remaining

portion of the Site.  The remedy in the Final ROD Amendment was estimated by Honeywell to cost half of the estimated cost of the initial proposed ROD amendment.

36.     The Final ROD Amendment was based on a proposal by Honeywell to NYSDEC for an end use of the Site consisting of a commercial/industrial redevelopment and a City park.   The City agreed with this end use proposal, and supported the Remedy in the Final ROD Amendment.

37.      Pursuant to the AOC, Honeywell agreed to reimburse the NYSDEC for certain past costs, and to perform the remedial design and remedial action set out in the Final ROD Amendment.

38.     Honeywell commenced, and has almost completed, the remedial investigation, remedial design, and remedial action activities on the Site, as required by the AOC.

39.     At all relevant times, Honeywell has implemented response actions at the Site, reimbursed NYSDEC for its costs under the ROD and Final ROD Amendment, and, in so doing, has incurred costs, and will continue to incur costs ("Site Costs"), that are consistent with the National Contingency Plan ("NCP"), 42 U.S.C. § 9605(a), 40 C.F.R. Part 300 *et seq.*  The Site Costs Honeywell has incurred to date total approximately $18 million.

40.     Of the nearly $18 million in Site costs incurred to date, approximately $7.6 million are attributable to remedial actions on or related to the Moore parcel.

## COUNT I – CERCLA SECTION 107

41.     Honeywell realleges and incorporates by reference paragraphs 1 through 40, above, as if fully set forth herein.

42.     Pursuant to Section 107(a)(4)(B) and (a)(4)(C) of CERCLA, 42 U.S.C. §§ 9607(a)(4)(B), (a)(4)(C), any person who is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), shall be liable for necessary response costs incurred by any other person consistent with the NCP.

43.     Pursuant to CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2), a person, who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, is strictly liable for all costs of removal or remedial actions that are incurred by any other person at such facility.

44.     The Site, including the Moore parcel, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9701(9).

45.     Defendants are each "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9701(21).

46.     Lead and PAHs are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9701(14).

47.     There have been "releases" and/or threatened "releases" of "hazardous substances" at and/or from the Site within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).

48.     Honeywell has been required to incur and will continue to incur significant Site Costs in response to the releases and/or threatened releases of hazardous substances at the Site.  These hazardous substances include the same types of hazardous substances that Defendants or their predecessor generated and/or disposed of at the Site.

49.     All of the Site Costs and other costs or damages that Honeywell has incurred and will incur in connection with the Site are necessary and consistent with the NCP.

50.     Defendants, or their predecessor(s), formerly owned and/or operated a portion of the Site.  Defendants, or their predecessor(s), generated and disposed of hazardous substances on the Site. Accordingly, Defendants are liable pursuant to CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), to Honeywell for the Site Costs and other costs and damages it has incurred and will incur at the Site.

51.     Defendants are therefore liable to Honeywell, jointly and severally, for Honeywell's Site Costs.

52.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Honeywell is entitled to recover interest on Site Costs or damages it has paid or may pay in the future.

## COUNT II – CERCLA SECTION 113

53.     Honeywell realleges and incorporates by reference paragraphs 1 through 52, above, as if fully set forth herein.

54.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), authorizes any person to seek contribution from any other person who is liable or potentially liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

55.     Honeywell has reimbursed NYSDEC for amounts greater than Honeywell's allocable share of such Site Costs and damages paid to date.

56.     Honeywell has and will incur costs at the Site that are greater than Honeywell's allocable share of costs and damages.

57.     Defendants are individually and collectively liable to Honeywell for those Site Costs paid by Honeywell that are in excess of Honeywell's allocable share and that are properly attributable to Defendants, individually or collectively.

- 10 -

58.     Honeywell requests that the Court determine the parties' allocable shares with respect to the Site Costs and damages and determine that Defendants are each liable to Honeywell for those Site Costs and damages paid or incurred by Honeywell that are in excess of Honeywell's allocable share and are properly attributable to each Defendant.

59.     Pursuant to Section 113(*l*) of CERCLA, 42 U.S.C. § 113(*l*), Honeywell is providing a copy of this Complaint to the Attorney General of the United States of America and the Administrator of the United States Environmental Protection Agency simultaneously with this filing.

60.     Pursuant to Section 107(a), Honeywell is entitled to recover interest on Site costs and damages it has paid or will pay in the future in excess of Honeywell's allocable share.

## COUNT III - NAVIGATION LAW

61.     Honeywell realleges and incorporates by reference paragraphs 1 through 60, as if fully set forth herein.

62.     Article 12 of the New York Navigation Law (the "Navigation Law") regulates petroleum discharges in New York State.

63.     Section 181(1) of the Navigation Law provides, in pertinent part, that: "any person who has discharged petroleum shall be strictly liable . . . for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained . . . ."

64.     Petroleum, as defined in Section 172(15) of the Navigation Law, includes, without limitation, any kind of petroleum product, including oils.

65.     Section 181(5) of the Navigation Law provides that "any claim by any injured person for the costs of cleanup and removal and direct and indirect damages . . . may be brought directly against the person who has discharged the petroleum . . . ."

66.     Defendants discharged petroleum products at the Site, including but not limited to hydraulic oils, and are responsible for and/or caused the petroleum discharges to the Site.

67.     Honeywell incurred Site Costs for the remediation of the disposal and discharge of petroleum products at the Site by Defendants.

68.     By their actions, Defendants are each liable to Honeywell under Section 181(5) of the Navigation Law for the past, present and future costs that Honeywell has incurred, and will incur in the future, which are the result of petroleum discharges at the Site.

## COUNT IV

## DECLARATORY JUDGMENT FOR FUTURE SITE COSTS

69.     Honeywell realleges and incorporates by reference paragraphs 1 through 68, above, as if fully set forth herein.

70.     Defendants do not acknowledge that they are liable to Honeywell for response costs and damages arising out of or related to the Site.  Thus, an actual, substantial, and legal controversy has arisen and now exists between Honeywell, on the one hand, and each Defendant, on the other, with regard to responsibility for such costs and damages and how these should be allocated among Honeywell and the Defendants. The controversy is of sufficient immediacy to warrant the issuance of declaratory judgment.

71.     Absent a judicial determination setting forth the parties' rights and obligations, including the appropriate allocable shares under CERCLA, Honeywell may be

obligated in the future to pay costs and damages that, under CERCLA, are in fact the responsibility of the Defendants, individually or collectively.

72.     For these reasons, Honeywell seeks declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 113(g)(2), and Section 2201 of the Judicial Code, 28 § U.S.C. 2201, allocating Site costs and damages among Honeywell and the Defendants, and holding each Defendant liable for the share of future Site costs as allocated to it.

## COUNT V

## CONTRIBUTION UNDER THE CPLR AND COMMON LAW

73.     Honeywell hereby incorporates by reference paragraphs 1 through72, above, as if fully set forth herein.

74.     Both Section 1401 of the New York Civil Practice Laws and Rules ("CPLR") and the common law provide that if two or more persons are subject to liability for damages or costs for the same injury, one person may claim contribution from the other for any damages or costs incurred by that person in excess of his or her equitable share.

75.     As a direct and proximate result of the acts and/or omissions of Defendants, Honeywell has incurred, and will incur in the future, costs for the investigation and remediation of the contamination at the Site in excess of its equitable share.

76.     Honeywell requests judgment in Count V for contribution from Defendants pursuant to CPLR § 1401 and common law for all costs that Honeywell has incurred and will incur in addressing the contamination at the Site, plus interest and costs, attorneys' fees, and such other relief as the Count may deem appropriate and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Honeywell respectfully requests that this Court enter a judgment in favor of Honeywell and against each Defendant:

(1)     Awarding Honeywell recovery against each Defendant for the Site costs and damages paid, or to be paid, by Honeywell, with interest;

(2)     Awarding Honeywell contribution against each Defendant for the Site costs and damages that are allocable to Defendants individually or collectively, with interest;

(3)     Granting judgment and award costs and damages to Honeywell under Article 12 of New York's Navigation Law due to petroleum contamination at the Site attributable to Defendants' petroleum discharges and disposals at the Site.

(4)     Granting judgment to Honeywell declaring Honeywell's allocable share, on the one hand, and each Defendant's allocable share, on the other, for Site costs and damages; that Defendants are individually or collectively liable for those costs and damages that are allocable to them; and further declaring that these determinations will be binding on any subsequent action or actions to recover future response costs.

(5)     Granting Honeywell such other and further relief as the Court deems just, proper or necessary.

Dated:   Syracuse, New York
         December 2, 2016

William J. Gilberti, Jr., Esq.
Gilberti Stinziano Heintz & Smith, P.C.
Attorneys for Plaintiff
555 East Genesee Street
Syracuse, New York 13202
Tel:  (315) 442-0100