# RECORD OF DECISION AMENDMENT

# Tract II Highland Avenue Site
State Superfund Project
Niagara Falls, Niagara County
Site No. 932136
March 2012



Prepared by
Division of Environmental Remediation
New York State Department of Environmental Conservation

# DECLARATION STATEMENT
# RECORD OF DECISION AMENDMENT

Tract II Highland Ave
State Superfund Project
Niagara Falls, Niagara County
Site No. 932136
March 2012

## Statement of Purpose and Basis

This document presents the remedy for the Tract II Highland Ave. site, a Class 2 inactive hazardous waste disposal site.  The remedial program was chosen in accordance with the New York State Environmental Conservation Law and Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York (6 NYCRR) Part 375, and is not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan of March 8, 1990 (40CFR300), as amended.

This decision is based on the Administrative Record of the New York State Department of Environmental Conservation (the Department) for the Tract II Highland Ave site and the public's input to the proposed Record of Decision Amendment presented by the Department.  A listing of the documents included as a part of the Administrative Record is included in Appendix B of the ROD.

## Description of Selected Remedy

The elements of the proposed amended remedy are as follows:

1.  A remedial design program to verify the components of the conceptual design and provide the details necessary for the construction of the remedial program. To maximize the net environmental benefit, Green remediation and sustainability efforts are considered in the design and implementation of the remedy to the extent practicable, including;

    ▪ using renewable energy sources;

    ▪ reducing green house gas emissions;

    ▪ encouraging low carbon technologies;

    ▪ foster green and healthy communities;

    ▪ conserve natural resources;

    ▪ increase recycling and reuse of clean materials;

- preserve open space and working landscapes;

- utilize native species and discourage invasive species establishment during restoration;

- promote recreational use of natural resources;

2. Development and submittal of a work plan to assess the extent of radionuclides at the site and development of plans necessary to address handling and disposal requirements for radiological waste material.

3. Excavation and off-site disposal of contaminated waste and fill materials from the western portion of the site that exceed Part 375 commercial use SCOs;

4. Contaminated wastes, soil and debris will be excavated and characterized prior to relocation and/or placement of the cover system. Excavated material that is below the hazardous waste leachability criteria for lead of 5.0 mg/l would be consolidated above the water table and covered with a soil cover. Excavated material that exceeds the hazardous waste leachability criteria for lead of 5.0 mg/l would be either sent off-site for disposal or treated by a stabilization technique. Prior to treatment excavated materials would be screened to separate soil and debris. Treated material that has been rendered non-hazardous and meets the land disposal criteria will be consolidated above the water table and covered with a soil cover. Soils exhibiting concentrations of lead that is too high and cannot be stabilized to meet the required leachability criteria will be disposed of off-site at an approved disposal facility. Debris that is sorted from the soil will be characterized and sent off site to an appropriate facility for disposal. Excess treated soil, that exceeds the fill capacity of the excavation and/or final site grades, will be removed off-site for disposal. Treatment on site will meet the basic requirements of Parts 373 & 374 for handling and treating hazardous waste;

5. An ex-situ solidification/stabilization process that uses a solidifying or stabilizing agent to bind the excavated soil into a low permeability mass will be used to treat the characteristic lead contamination. Under this process the contaminated soil will be excavated and mixed in a temporary mixing facility (i.e., pug mill, mixer, etc.) with solidifying or stabilizing agents (typically portland cement) or other binding agents. The soil and agent are mixed to a concrete like slurry that is placed in the subsurface on-site resulting in a solidified monolith of low permeable material. The solidified mass will then be covered with a soil cover as described below, to prevent direct exposure to the solidified mass. The resulting solid matrix reduces or eliminates mobility of contamination and reduces or eliminates the matrix as a source of groundwater contamination.

6. A site cover will be required over the entire site to allow commercial and/or passive recreational use of the site. The cover will consist either of the structures such as buildings, pavement, sidewalks comprising the site development or a soil cover in areas where the upper one foot of exposed surface soil will exceed the applicable soil cleanup objectives (SCOs). Where the soil cover is required, it will be a minimum of one foot of

soil for areas of commercial development and two feet of soil for area designated for recreational use, meeting the SCOs for cover material as set forth in 6 NYCRR Part 375-6.7(d) for commercial use and recreational use, respectively.  The soil cover will be placed over a demarcation layer, with the upper six inches of the soil of sufficient quality to maintain a vegetation layer.  Any fill material brought to the site will meet the requirements for the identified site use as set forth in 6 NYCRR Part 375-6.7(d);

7. Creation of clean utility corridors through the consolidated material in order to accommodate future re-development;

8. Backfill and grading of the western excavation areas with available clean concrete and brick building debris, supplemented as needed with clean backfill soils. Any fill material brought to the site will meet the requirements for the identified site use as set forth in 6 NYCRR Part 375-6.7(d);

9. In-place demolition of the underground parking garage on the western portion of the site;

10. Imposition of an institutional control in the form of an environmental easement for the property that:

(a) requires the remedial party or site owner to complete and submit to the Department a periodic certification of institutional and engineering controls in accordance with Part 375-1.8 (h)(3).;

(b) land use is subject to local zoning laws, the remedy allows the use and development of the controlled property for commercial and industrial uses;

(c) restricts the use of groundwater as a source of potable or process water, without necessary water quality treatment as determined by the Department, NYSDOH, County DOH, or City Authority;

(d) prohibits agricultural or vegetable gardens on the controlled property; and

(e) requires compliance with the Department approved Site Management Plan;

11. A Site Management Plan is required, which includes the following:

(a) an Institutional Control Plan that identifies all use restrictions for the site and details the steps and media-specific requirements necessary to assure the institutional controls remain in place and effective.  This plan includes, but may not be limited to:

(i) an Excavation Plan for the western portion of the site which details the provisions for management of future excavations in areas of remaining contamination;

(ii) descriptions of the provisions of the environmental easement for the western portion of the site including any land use restrictions;

(iii) maintaining site access controls and Department notification; and

(iv) the steps necessary for the periodic reviews and certification of the institutional and/or engineering controls.

(b) a Monitoring Plan to assess the performance and effectiveness of the remedy.  The plan includes, but may not be limited to:

(i) monitoring groundwater quality and elevation to assess the performance and effectiveness of the remedy;

(ii) soil cover system inspection and maintenance, as necessary, to ensure its function is not impaired by erosion or activities at the site;

(iii) a schedule of monitoring and frequency of submittals to the Department;

## New York State Department of Health Acceptance

The New York State Department of Health (NYSDOH) concurs that the remedy for this site is protective of human health.

## Declaration

The selected remedy is protective of human health and the environment, complies with State and Federal requirements that are legally applicable or relevant and appropriate to the remedial action to the extent practicable, and is cost effective.  This remedy utilizes permanent solutions and alternative treatment or resource recovery technologies, to the maximum extent practicable, and satisfies the preference for remedies that reduce toxicity, mobility, or volume as a principal element.

_____
March 28, 2012

Date

_____
Robert W. Schick, P.E., Acting Director
Division of Environmental Remediation

# RECORD OF DECISION AMENDMENT

## Tract II Highland Ave

## Niagara Falls, Niagara County

## Site No. 932136

## March 2012

## SECTION 1:  SUMMARY AND PURPOSE

The New York State Department of Environmental Conservation (the Department), in consultation with the New York State Department of Health (NYSDOH), has selected a remedy for the above referenced site. The disposal of hazardous wastes at the site has resulted in threats to public health and the environment that would be addressed by the remedy.  The disposal or release of hazardous wastes at this site, as more fully described in this document, has contaminated various environmental media.  The remedy is intended to attain the remedial action objectives identified for this site for the protection of public health and the environment.  This Record of Decision (ROD) identifies the selected remedy, summarizes the other alternatives considered, and discusses the reasons for selecting the remedy.

The New York State Inactive Hazardous Waste Disposal Site Remedial Program (also known as the State Superfund Program) is an enforcement program, the mission of which is to identify and characterize suspected inactive hazardous waste disposal sites and to investigate and remediate those sites found to pose a significant threat to public health and environment.

The Department has issued this document in accordance with the requirements of New York State Environmental Conservation Law and 6 NYCRR Part 375.  This document is a summary of the information that can be found in the site-related reports and documents.

## SECTION 2:  CITIZEN PARTICIPATION

The Department seeks input from the community on all remedies.  A public comment period was held, during which the public was encouraged to submit comment on the proposed remedy.  All comments on the remedy received during the comment period were considered by the Department in selecting a remedy for the site.  Site-related reports and documents were made available for review by the public at the following document repository:

Doris Jones Family Resource Center
3001 9th Street
Niagara Falls, NY 14305
(716) 285-5374
Hours:  Mon. – Fri. 8:30 AM - 9pm

NYSDEC Region 9 Offices
Contact:  Mr. Tim Dieffenbach, Project Manager
270 Michigan Avenue
Buffalo, NY 14203
(716) 851-7220
Hours:  Mon. - Fri. 8:30am - 4:45pm

A public meeting was also held on March 1, 2012 to present the findings of the remedial investigation (RI) and the feasibility study (FS) along with a summary of the proposed remedy. After the presentation, a question-and-answer period was held, during which verbal or written comments were accepted on the proposed remedy.

Comments on the remedy received during the comment period are summarized and addressed in the responsiveness summary section of the ROD in Appendix A.


## SECTION 3:  SITE DESCRIPTION AND HISTORY

Location:  The Tract II Site is a 20 acre parcel located on the northeast corner of Highland and Beech Avenues in the City of Niagara Falls.

Site Features:  The site is bordered on the north by a large dilapidated building formerly used as a battery manufacturing facility (the Power City Warehouse Site #932131).  Highland Avenue, which has a mix of commercial and residential properties, runs along the west side of the site. Beech Avenue, with mostly residential properties (and a park), runs along the south side of the site.  Residential properties and a church border the site to the east.   A strip of land owned by the National Grid bisects the Tract II site into the eastern and western portions. The site is also located in the Highland Avenue Brownfield Opportunity Area (BOA).

Current Zoning/Use(s):  Current zoning is for industrial use; however, zoning may be changed with the remediation and redevelopment of the site to commercial use to be in conformance with the City's Master Plan.

Historic Use(s):  The western portion of the Tract II site was once home to a series of business form manufacturing companies (from 1903-1971).  The eastern portion of the Tract II site is believed to have been either directly or indirectly associated with the former manufacturing activities at the adjacent Power City Warehouse.  The City currently owns both the Tract II and Power City Warehouse (aka Tract I) sites through tax foreclosures.

The eastern portions of the site have up to 9 feet of waste and fill materials over the native soils. These waste and fill materials include building demolition debris such as brick, concrete, sand, wood, etc.  However, also present on the eastern portion of the Tract II site are wastes that were likely associated with the manufacturing activities at the adjacent Power City Warehouse site. These wastes include plastic battery casings and other granular fill materials.  In addition, there has been significant illegal dumping of household items along the north-east portion of the site. These wastes include numerous TVs and other items which may have contributed to the contaminants detected in surface soils in this part of the site.

A site investigation was completed by the City under the Environmental Restoration Program (ERP site #B00022) in 2000, and a Record of Decision was issued by the Department in March 2003. The primary site contaminants identified in the ROD were metals and PAHs in site soils. Upon issuance of the 2003 ROD, the City elected not to implement the ROD remedial requirements under the ERP.

The site was determined to pose a significant threat due to the potential for direct human contact with site contaminants, especially metals contaminated surface soils by trespassing youths. The site was therefore listed on the Registry as Site No. 932136 and classified as a Class 2 site in 2008.

A Supplemental Remedial Investigation was completed in October 2009 by DEC. In November 2009 the EPA fenced the site buildings (the remainder of the site is not fenced) to help reduce trespassing. The EPA also removed and cleaned PCB sludge and water from a sump within the underground parking garage as part of an Emergency Removal action that was conducted in 2009 on the adjacent Power City Warehouse property. The garage is located in the western portion of the site and was part of the Moore Business Forms Building,

Site Geology/Hydrogeology: Underlying the waste and fill materials (at depths starting from 1-9 feet below the surface) is a native reddish silty clay soil which extends to the top of bedrock (which occurs at depths from 12-24 feet). With the exception of some very limited areas of perched groundwater, there is no overburden groundwater present at the site.

A Record of Decision was issued previously for OU 01 in March 2003.

A site location map is attached as Figure 1.


**SECTION 4: LAND USE AND PHYSICAL SETTING**

The Department may consider the current, intended, and reasonably anticipated future land use of the site and its surroundings when evaluating a remedy for soil remediation. For this site, alternatives (or an alternative) that restrict(s) the use of the site to commercial use as described in Part 375-1.8(g) are/is being evaluated in addition to an alternative which would allow for restricted use of the site.


**SECTION 5: ENFORCEMENT STATUS**

Potentially Responsible Parties (PRPs) are those who may be legally liable for contamination at a site. This may include past or present owners and operators, waste generators, and haulers.

The Department and Honeywell Corporation entered into a Consent Order in October 2011. This Order obligates Honeywell to implement a RD/RA for OU1.

## SECTION 6:  SITE CONTAMINATION

### 6.1:  Summary of the Remedial Investigation

A Remedial Investigation (RI) has been conducted.  The purpose of the RI was to define the nature and extent of any contamination resulting from previous activities at the site.  The field activities and findings of the investigation are described in the RI Report.

The following general activities are conducted during an RI:

- Research of historical information,

- Geophysical survey to determine the lateral extent of wastes,

- Test pits, soil borings, and monitoring well installations,

- Sampling of waste, surface and subsurface soils, groundwater, and soil vapor,

- Sampling of surface water and sediment,

- Ecological and Human Health Exposure Assessments.

While the majority of the investigation work was completed by the City of Niagara Falls under the Environmental Restoration Program (ERP) Grant, subsequent sampling was conducted by the Department and Honeywell Corporation in order to further define the extent and characteristics of the contamination on the site.

### 6.1.1:  Standards, Criteria, and Guidance (SCGs)

The remedy must conform to promulgated standards and criteria that are directly applicable or that are relevant and appropriate.  The selection of a remedy must also take into consideration guidance, as appropriate.  Standards, Criteria and Guidance are hereafter called SCGs.

To determine whether the contaminants identified in various media are present at levels of concern, the data from the RI were compared to media-specific SCGs.  The Department has developed SCGs for groundwater, surface water, sediments, and soil.  The NYSDOH has developed SCGs for drinking water and soil vapor intrusion.  The tables found in Exhibit A list the applicable SCGs in the footnotes.  For a full listing of all SCGs, see: http://www.dec.ny.gov/regulations/61794.html

### 6.1.2:  RI Information

The analytical data collected on this site includes data for:

- groundwater

- soil

The data have identified contaminants of concern.  A "contaminant of concern" is a hazardous waste that is sufficiently present in frequency and concentration in the environment to require evaluation for remedial action.  Not all contaminants identified on the property are contaminants of concern.  The nature and extent of contamination and environmental media requiring action are summarized in the March 2003 ROD.  Additionally, the RI Report contains a full discussion of the data.  The contaminant(s) of concern identified for this Operable Unit at this site is/are:

- lead

- polycyclic aromatic hydrocarbons (PAHs)

As illustrated in the original 2003 ROD for OU 1 of this site, the contaminant(s) of concern exceed the applicable SCGs for:

- soil

Since the issuance of the FS and ROD, new information about the site has been obtained.  The most significant finding is the presence of levels of lead in site soils for leachability that exceed regulatory limits in the eastern portion of the site.  Additionally, radiological scoping surveys were performed in 2012 to determine if this property has radiological impacts similar to those identified at nearby properties in and around Niagara Falls, New York.  The survey was a screening effort that was performed to determine if a more comprehensive survey needed to be conducted. Gama radiation responses ranged from less than 12,000 counts per minute (KCPM) to over 25 KCPM at 3 locations. Findings from the survey are illustrated on Figure 2. Excavation of the test pits indicates slag may be the source of the elevated gamma responses.  A work plan to better assess the extent of radionuclides at the site will be developed and submitted for Department approval.

**6.2:** **Interim Remedial Measures**

No interim remedial measures were conducted as part of the project.

**6.3:** **Summary of Human Exposure Pathways**

This human exposure assessment identifies ways in which people may be exposed to site-related contaminants.   Chemicals can enter the body through three major pathways (breathing, touching or swallowing).  This is referred to as exposure.

The site is partially fenced, which along with heavy overgrowth, limits public access. However, persons who enter the site could contact contaminants in the soil by walking on the site, digging or otherwise disturbing the soil. Groundwater is not present at the site and the area is served by a public water supply that is not affected by the contamination.

**6.4:** **Summary of Environmental Assessment**

This section summarizes the assessment of existing and potential future environmental impacts presented by the site.  Environmental impacts may include existing and potential

future exposure pathways to fish and wildlife receptors, wetlands, groundwater resources, and surface water.

The Fish and Wildlife Resources Impact Analysis (FWRIA) for OU 01, which is included in the RI report, presents a detailed discussion of the existing and potential impacts from the site to fish and wildlife receptors. Given the highly urbanized area in the vicinity of the Tract II Site, wildlife resources are limited.

Site groundwater has not been impacted and there is little overburden groundwater present due to the low permeability native soils.

## 6.5:    **Summary of the Remediation Objectives**

Goals for the cleanup of the site were established in the original ROD.  The goals selected for this site are:

- Reduce, control, or eliminate to the extent practicable the contamination present within the soils and fill on site, and thereby eliminate the significant threat posed by the presence of hazardous wastes at the site.

- Eliminate the potential for direct human or animal contact with the contaminated soils or groundwater on site.

- Eliminate the threat to surface waters and sediments by eliminating surface run-off and subsurface releases of fill from the site.

- Prevent, to the extent possible, migration of contaminants at the site to groundwater and surface water.

Further, the remediation goals for the site include attaining to the extent practicable:

- Provide for attainment of SCGs for groundwater quality at the limits of the site.


## SECTION 7:  <u>SUMMARY OF THE SELECTED REMEDY</u>

To be selected the remedy must be protective of human health and the environment, be cost-effective, comply with other statutory requirements, and utilize permanent solutions, alternative technologies or resource recovery technologies to the maximum extent practicable.  The remedy must also attain the remedial action objectives identified for the site, which are presented in Section 6.5.  Potential remedial alternatives for the Site were identified, screened and evaluated in the feasibility study (FS) report.

Cost information is presented in the form of present worth, which represents the amount of money invested in the current year that would be sufficient to cover all present and future costs associated with the alternative.  This enables the costs of remedial alternatives to be compared on a common basis.  As a convention, a time frame of 30 years is used to evaluate present worth

costs for alternatives with an indefinite duration. This does not imply that operation, maintenance, or monitoring would cease after 30 years if remediation goals are not achieved.

For OU: 00

The estimated present worth cost to implement the remedy is $48,000. The cost to construct the remedy is $ 0 and the estimated average annual cost is $2,000.

The elements of the selected remedy are as follows:

Long Term Site Management

For OU: 01

The estimated present worth cost to implement the remedy is $6,051,000.  The cost to construct the remedy is estimated to be $6,021,000 and the estimated average annual cost is $2,000.

The elements of the selected remedy are as follows:

1.  A remedial design program to verify the components of the conceptual design and provide the details necessary for the construction of the remedial program. To maximize the net environmental benefit, Green remediation and sustainability efforts are considered in the design and implementation of the remedy to the extent practicable, including;

    ▪  using renewable energy sources;

    ▪  reducing green house gas emissions;

    ▪  encouraging low carbon technologies;

    ▪  foster green and healthy communities;

    ▪  conserve natural resources;

    ▪  increase recycling and reuse of clean materials;

    ▪  preserve open space and working landscapes;

    ▪  utilize native species and discourage invasive species establishment during restoration;

    ▪  promote recreational use of natural resources;

2.  Development and submittal of a work plan to assess the extent of radionuclides at the site and development of plans necessary to address handling and disposal requirements for radiological waste material.

3. Excavation and off-site disposal of contaminated waste and fill materials from the western portion of the site that exceed Part 375 commercial use SCOs;

4. Contaminated wastes, soil and debris will be excavated and characterized prior to relocation and/or placement of the cover system. Excavated material that is below the hazardous waste leachability criteria for lead of 5.0 mg/l would be consolidated above the water table and covered with a soil cover. Excavated material that exceeds the hazardous waste leachability criteria for lead of 5.0 mg/l would be either sent off-site for disposal or treated by a stabilization technique. Prior to treatment excavated materials would be screened to separate soil and debris. Treated material that has been rendered non-hazardous and meets the land disposal criteria will be consolidated above the water table and covered with a soil cover. Soils exhibiting concentrations of lead that is too high and cannot be stabilized to meet the required leachability criteria will be disposed of off-site at an approved disposal facility. Debris that is sorted from the soil will be characterized and sent off site to an appropriate facility for disposal. Excess treated soil, that exceeds the fill capacity of the excavation and/or final site grades, will be removed off-site for disposal. Treatment on site will meet the basic requirements of Parts 373 & 374 for handling and treating hazardous waste;

5. An ex-situ solidification/stabilization process that uses a solidifying or stabilizing agent to bind the excavated soil into a low permeability mass will be used to treat the characteristic lead contamination. Under this process the contaminated soil will be excavated and mixed in a temporary mixing facility (i.e., pug mill, mixer, etc.) with solidifying or stabilizing agents (typically portland cement) or other binding agents. The soil and agent are mixed to a concrete like slurry that is placed in the subsurface on-site resulting in a solidified monolith of low permeable material. The solidified mass will then be covered with a soil cover as described below, to prevent direct exposure to the solidified mass. The resulting solid matrix reduces or eliminates mobility of contamination and reduces or eliminates the matrix as a source of groundwater contamination.

6. A site cover will be required over the entire site to allow commercial and/or passive recreational use of the site. The cover will consist either of the structures such as buildings, pavement, sidewalks comprising the site development or a soil cover in areas where the upper one foot of exposed surface soil will exceed the applicable soil cleanup objectives (SCOs). Where the soil cover is required, it will be a minimum of one foot of soil for areas of commercial development and two feet of soil for area designated for recreational use, meeting the SCOs for cover material as set forth in 6 NYCRR Part 375-6.7(d) for commercial use and recreational use, respectively. The soil cover will be placed over a demarcation layer, with the upper six inches of the soil of sufficient quality to maintain a vegetation layer. Any fill material brought to the site will meet the requirements for the identified site use as set forth in 6 NYCRR Part 375-6.7(d);

7. Creation of clean utility corridors through the consolidated material in order to accommodate future re-development;

8. Backfill and grading of the western excavation areas with available clean concrete and brick building debris, supplemented as needed with clean backfill soils. Any fill material brought to the site will meet the requirements for the identified site use as set forth in 6 NYCRR Part 375-6.7(d);;

9. In-place demolition of the underground parking garage on the western portion of the site;

10. Imposition of an institutional control in the form of an environmental easement for the property that:

(a) requires the remedial party or site owner to complete and submit to the Department a periodic certification of institutional and engineering controls in accordance with Part 375-1.8 (h)(3).;

(b) land use is subject to local zoning laws, the remedy allows the use and development of the controlled property for commercial and industrial uses;

(c) restricts the use of groundwater as a source of potable or process water, without necessary water quality treatment as determined by the Department, NYSDOH, County DOH, or City Authority;

(d) prohibits agricultural or vegetable gardens on the controlled property; and

(e) requires compliance with the Department approved Site Management Plan;

11. A Site Management Plan is required, which includes the following:

(a) an Institutional Control Plan that identifies all use restrictions for the site and details the steps and media-specific requirements necessary to assure the institutional controls remain in place and effective.  This plan includes, but may not be limited to:

(i) an Excavation Plan for the western portion of the site which details the provisions for management of future excavations in areas of remaining contamination;

(ii)descriptions of the provisions of the environmental easement for the western portion of the site including any land use restrictions;

(iii)maintaining site access controls and Department notification; and

(iv)the steps necessary for the periodic reviews and certification of the institutional and/or engineering controls.

(b) a Monitoring Plan to assess the performance and effectiveness of the remedy.  The plan includes, but may not be limited to:

(i) monitoring groundwater quality and elevation to assess the performance and effectiveness of the remedy;

(ii) soil cover system inspection and maintenance, as necessary, to ensure its function is not impaired by erosion or activities at the site;

(iii) a schedule of monitoring and frequency of submittals to the Department;

# APPENDIX A

## Responsiveness Summary

# RESPONSIVENESS SUMMARY

## Tract II Highland Ave.
## State Superfund Project
## Niagara Falls, Niagara County
## Site No. 932136

## March 2012

The proposed Record of Decision Amendment (AROD) for the Tract II Site was prepared by the New York State Department of Environmental Conservation (NYSDEC), in consultation with the New York State Department of Health (NYSDOH), and issued to the local document repository on February 15, 2012. The proposed amendment is intended to attain the remedial action objectives identified for this site for the protection of public health and the environment. The amendment identifies the new information which has lead to this proposed amendment and discusses the reasons for the preferred remedy.

A public meeting was held on March 1, 2012, which included a presentation of the remedial investigation (RI) and Focused Feasibility Study (FFS) for the Tract II site, as well as a discussion of the proposed remedy. The meeting provided an opportunity for citizens to discuss their concerns, ask questions and comment on the proposed remedy. These comments have become part of the Administrative Record for this site. The public comment period for the AROD ended on March 15, 2012

This responsiveness summary responds to all questions and comments raised during the public comment period. The following are the comments received, with the Department's responses:

The following are the comments received at the public meeting, with the NYSDEC's responses:

Comment 1: What was the radiation measured with and what type and levels of radiological waste is present on the site?

Response 1: The radiation was measured with a hand held monitoring devise (sodium iodide detector (2 inch by 2 inch) coupled to scalers). The radiological waste is present in slag material and similar to that found at the Norampac/Greenpac Brownfield Clean-up Site, near Pine Ave. & 47th Street, and other sites throughout the Niagara Falls area. The slag material was commonly used as a building sub-base beneath roadways and parking lots. Gama radiation responses ranged from less than 12,000 counts per minute (KCPM) to over 25 KCPM (screening results over 25 KCPM were found at 3 locations along Beech Ave.).

Comment 2: What process would be used to remove the radiological waste?

Response 2: The material will be excavated and trucked to a facility permitted to receive and store radiological waste. This site location will be determined during the bidding of the project.

Comment 3: What traffic route will be used for the trucks?

Response 3: The trucks would most likely travel on City streets from Highland Ave. to College Ave., to Hyde Park Blvd and then to the I-190. A traffic plan will be developed and will be made available for public review. A temporary road with access directly to College Ave is not possible because it would require crossing many right-of-ways and private properties

Comment 4: What safety precautions will be implemented?

Response 4: A Site Heath and Safety Plan including a community air monitoring plan will be developed for review and approval. The site will be secured with fencing and air monitoring will take place continuously throughout the demolition and remedial work process.

Comment 5: What are the best practices for dealing with excavation of the radioactive waste?

Response 5: Primarily dust control through wetting with water or foam.

Comment 6: What will be done to inform residents of the project progress?

Response 6: Fact sheets will be developed throughout the remedial process to inform residents of the project progress. Flyers may be distributed and addition public meetings may take place. Copies of reports, plans and fact sheets will be available for review at the document repository located at the Doris Jones Family Resource Building and online through the DEC website. Air monitoring results will be available on-site and at the Doris Jones Family Resource Building.

# APPENDIX B
## Administrative Record

# Administrative Record
## Tract II Highland Ave.
## State Superfund Project
## Niagara Falls, Niagara County
## Site No. 932136
## March 2012

1. City of Niagara Falls, Tract II Site Redevelopment, May 18 1997, Revised July 22, 1998, Application for State funds under 1996 Clean Water/ Clean Air Bond Act, Environmental Restoration Projects - Title 5

2. Ecology and Environment Engineering, P. C., Final Work Plan for Site Investigation and Remedial Action Report (SI/RAR), Tract II Site, November 1998, Prepared for Department of Environmental Services, City of Niagara Falls

3. New York State Department of Environmental Conservation 1996 Clean Water/Clean Air Bond Act, Environmental Restoration Projects - Title 5, Site Assistance Contract (SAC) No. C300726, Tract II Site, Project #No. B00022-9, February 1999

4. Ecology and Environment, P.C. Site investigation and Remedial Alternatives Report, Tract II Site, August 2000, Prepared for City of Niagara Falls, Office of Environmental Services

5. New York State Department of Environmental Conservation, Environmental Restoration, Proposed Remedial Action Plan, Tract II Site, City of Niagara Falls, Niagara County, August 2002

6. New York State Department of Environmental Conservation (NYSDEC), March 2003, Environmental Restoration Record of Decision, Tract II Site, Niagara Falls (C), Niagara County, Site Number B-0022-9

7. EA Engineering, P.C., October 2009, Supplemental Investigation Report Tract II Highland Avenue (9-32-136), Niagara Falls, New York

8. EA Engineering, P.C., March 2010, Basis of Design Report Tract II Highland Avenue (9-32-136), Niagara Falls, New York, Work Assignment D004441-30 NYSDEC, 2007, DER-15 Presumptive/Proven Remedial Technologies, DEC Program Policy

9. NYSDEC, 2010A, Proposed Record of Decision Amendment, Tract II Site, City of Niagara Falls, Niagara County, Registry Number 932136, April 2010

10. AMEC E & I, Inc., Draft Focused Feasibility Study, Tract II Site, Niagara Falls, Niagara County, New York, Site No. 932136, November 2011

# Figure 1 - Tract II Site Location



Scale: 1 inch = Approx. 2,500 Feet

# Figure 2 - Tract II Site Location



Scale: 1 inch = Approx. 800 Feet



DRAWN BY: NEL 1-4-2011        APPROVED BY: ESW 5-19-2011

TRACT I
SITE
BOUNDARY

HIGHLAND AVENUE

POWER CITY
WAREHOUSE

TRACT II
SITE
BOUNDARY

CONCRETE
FOUNDATION
OF
DEMOLISHED
BUILDING

SEVENTEENTH
STREET

BEECH AVENUE

BEECH AVENUE

THIRTEENTH
STREET

FIFTEENTH
STREET

SCALE: 1"=150'

150   0   150

HONEYWELL INTERNATIONAL, INC.
NIAGARA FALLS, NEW YORK

MACTEC
Engineering & Consulting Inc.
600 North Bell Avenue, Suite 200
Pittsburgh, PA 15106

TRACT I AND TRACT II
SITE PLAN

FIGURE: 2

2

Project No.: 3410100775

# Focused Feasibility Study

**Honeywell**



HONEYWELL - CONFIDENTIAL

File Number

# Focused Feasibility Study

**Honeywell**



# Focused Feasibility Study

**Honeywell**



HONEYWELL - CONFIDENTIAL

File Number



PRELIMINARY DEVELOPMENT PLAN:
CONCEPT 1
NOVEMBER 29, 2011



Figure 8

THIS DRAWING IS THE PROPERTY OF AMEC, INCLUDING ALL PATENTED AND PATENTABLE FEATURES, AND/OR CONFIDENTIAL INFORMATION AND ITS USE IS CONDITIONED UPON THE USERS AGREEMENT NOT TO REPRODUCE THE DRAWING, IN WHOLE OR PART, NOR THE MATERIAL DESCRIBED THEREON, NOR THE USE OF THE DRAWING FOR ANY PURPOSE OTHER THAN SPECIFICALLY PERMITTED IN WRITING BY AMEC.